Ryan R. Smith, State Bar 229323
Email:     rsmith@wsgr.com
Naoya Son, State Bar 324444
Email:     nson@wsgr.com
Alexander R. Miller, State Bar 347827
Email:     alex.miller@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA  94304-1050
Telephone:  (650) 493-9300
Facsimile:(866) 974-7329

Attorneys for Plaintiff
EIGHT SLEEP INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| EIGHT SLEEP INC., | Case No. 2:25-cv-09685 |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT, 35 U.S.C. § 271.** |
| v. | |
| ORION LONGEVITY INC., AND BLUE FUZION GROUP LTD. | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Eight Sleep Inc. ("Eight Sleep") for its Complaint against Defendants Orion Longevity Inc. ("Orion") and Blue Fuzion Group Ltd. ("BFG"), hereby alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action for infringement of U.S. Patent Nos. 10,792,461 (the "'461 Patent") (attached as Ex. 1), 12,377,240 (the "'240 Patent") (attached as Ex. 2), and 12,370,339 (the "'339 Patent") (attached as Ex. 3) (collectively, the "Asserted Patents"), arising under the Patent Laws of the United States, 35 U.S.C. §§ 271, *et seq.* Plaintiff brings this action to seek injunctive relief and damages arising out of Defendants' infringement of the Asserted Patents.

## THE PARTIES

2.     Plaintiff Eight Sleep is a Delaware corporation with its principal place of business at 915 Broadway, Ste 1301, New York, NY 10010.  Eight Sleep is a pioneering "sleep fitness" company that focuses on leveraging innovation, technology, and biometrics to design innovations that improve sleep.  Eight Sleep has spent millions of dollars researching and developing novel products to improve how people sleep, and the quality of that sleep.  Eight Sleep's products have various applications, from increasing not only the quality of sleep, but also quantity, as well as tracking key biometrics to monitor and improve overall health and fitness.  These innovations have resulted in the issuance of several patents, including the Asserted Patents.

3.     On information and belief, Defendant Orion is a Delaware corporation with its principal place of business at 621 23rd Street, Santa Monica, CA 90402.

4.     On information and belief, Defendant BFG is a Hong Kong company with its principal place of business at 303 Laford Centre, 838 Lai Chi Kok Road, Lai Chi Kok, Kowloon, Hong Kong.

5.     On information and belief, Defendants are engaged (including, as relevant, in the past) in making, using, selling, offering for sale, and/or importing,

1   and/or inducing one another and their respective subsidiaries, affiliates, distributors,

2   suppliers, retail partners, and customers in the making, using, selling, offering for sale,

3   and/or importing throughout the United States, including within this District, Orion

4   products.

## JURISDICTION, VENUE, AND JOINDER

6   6.    Eight Sleep incorporates by reference the preceding paragraphs as if

7   fully set forth herein.

8   7.    This action arises under the patent laws of the United States, including

9   35 U.S.C. §§ 271, *et seq.*  This Court has proper jurisdiction over the subject matter

10  of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

11  8.    This Court has personal jurisdiction over Orion.  Orion's principal place

12  of business is in this District, and on information and belief, Orion has committed acts

13  of infringement within this District by making, using selling, offering to sell, and

14  importing infringing products.

15  9.    This Court has personal jurisdiction over BFG.  On information and

16  belief, Defendants conduct business, have committed acts of patent infringement

17  directly or through related entities, and have induced acts of patent infringement by

18  others in this District and elsewhere in the United States, giving rise to this action

19  and/or has established minimum contacts with the State such that personal jurisdiction

20  over the Defendants would not offend traditional notions of fair play and substantial

21  justice.  On information and belief, Defendants place, have placed, and contribute to

22  placing their products into the stream of commerce through established distribution

23  channels knowing or understanding that such products would be sold and used in the

24  United States, including in this District.

25  10.    This Court has specific personal jurisdiction over BFG consistent with

26  the requirements of the Due Process Clause of the U.S. Constitution and the Long-

27  Arm Statute of the State of California.  On information and belief, each BFG has

28  availed itself of the privilege of conducting and soliciting business within California,

including engaging in at least some of the infringing activities in California, as well as by others acting as agents and/or representatives, such that it would be reasonable for this Court to exercise jurisdiction consistent with principles underlying the U.S. Constitution, and the exercise of jurisdiction by this Court would not offend traditional notions of fair play and substantial justice.

11.    Alternatively, this Court has personal jurisdiction over BFG under Fed. R. Civ. P. 4(k)(2).  This is because: (a) the claims for patent infringement in this action are claims arising under federal law; (b) BFG is not subject to the jurisdiction to any state's courts of general jurisdiction; and (c) exercising jurisdiction over the BFG is consistent with the U.S. Constitution.

12.    Venue is proper for Orion in this District under 28 U.S.C. § 1400(b). Orion has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and importing products that infringe the asserted patents.  Orion has a regular and established place of business in the District, Including at 621 23rd Street, Santa Monica, CA 90402.

13.    Venue is proper for BFG in this District pursuant to 28 U.S.C. § 1391. BFG is a foreign entity, and may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

14.    Joinder of Defendants is proper under 35 U.S.C. § 299 because Eight Sleep's right to relief is asserted against Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences.  As discussed below, Orion has, at minimum, offered to sell the "Orion Sleep System" (the "Accused Product"), while BFG has, on information and belief, participated in the manufacturing and importation of the same Accused Product.  As such, the allegations herein relate to the making, using, importing into the United States, offering for sale, or selling of the same Accused Product.

## THE ASSERTED PATENTS

15.    The '461 Patent is titled "Methods and Systems for Gathering and Analyzing Human Biological Signals," and was issued by the U.S. Patent and Trademark Office ("USPTO") on October 6, 2020. A true and correct copy of the '461 Patent is attached as Exhibit 1.

16.    The '240 Patent is titled "Methods and Systems for Gathering and Analyzing Human Biological Signals," and was issued by the USPTO on August 5, 2025. A true and correct copy of the '240 Patent is attached as Exhibit 2.

17.    The '339 Patent is titled "Methods and Systems for Gathering and Analyzing Human Biological Signals," and was issued by the USPTO on July 29, 2025. A true and correct copy of the '339 Patent is attached as Exhibit 3.

18.    Eight Sleep is the sole owner of, and possesses all rights, interests, and title of, the Asserted Patents, and holds the exclusive right to take all actions necessary to enforce its rights to the Asserted Patents, including filing the instant patent infringement lawsuit. Eight Sleep also possesses the right to recover all damages for past, present, and future infringement of the Asserted Patents, and to seek all injunctive relief as appropriate under the law.

19.    Eight Sleep has complied with all statutory requirements, including the requirements of 35 U.S.C. § 287, to pursue and recover for any infringement of the Asserted Patents.

20.    Defendants infringe one or more claims of the Asserted Patents, literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a)–(c), as alleged below.

## FACTUAL ALLEGATIONS

### Eight Sleep's Innovations

21.    Sleep deficiency is linked to many physical and mental health problems, such as heart disease, kidney disease, high blood pressure, diabetes, stroke, obesity, and depression. *See* Ex. 4. "About 1 in 3 adults in the United States reported not getting enough rest or sleep every day." *Id.* Further, "[n]early 40% of adults report

falling asleep during the day without meaning to at least once a month. Also, an estimated 50 to 70 million Americans have chronic, or ongoing, sleep disorders." *Id*.

22.    Eight Sleep was founded in 2014 by Matteo Franceschetti, Massimo Bassi, and Alexandra Zatarain with the mission to "fuel human potential through optimal sleep." After surveying thousands of potential customers and collecting more than 43 million hours of sleep data, Eight Sleep discovered that "[b]ody temperature is one of the main factors that affects sleep quality and, therefore, must be tightly regulated for optimal sleep." *See* Ex. 5 at 1. Eight Sleep developed its flagship product, the "Eight Sleep Pod," a bio-tracking mattress cover that utilizes dynamic heating and cooling to improve sleep quality by reducing sleep interruptions and increasing periods of deep sleep. *See* Ex. 6. In 2019, Eight Sleep released its first Eight Sleep Pod. The Eight Sleep Pod is depicted below, with the pad (laid on top of a bed mattress) on the left, and the base unit on the right:



23.    "[T]he Eight Sleep Pod is a temperature-regulated mattress cover that provides individualized temperature regulation (*i.e.*, selection of temperatures ranging from 13 to 43C) on each side of the bed at three different points in the night, allowing for continuous temperature regulation throughout the night." Ex. 5 at 2. The Eight Sleep Pod improves upon prior methods to regulate body temperature during sleep (*e.g.*, manipulating ambient temperature, warming the extremities, modifying clothing or bedding layers, using electric blankets, using a thermal suit during sleep, cooling the head, or sleeping on a high heat capacity mattress) as such prior methods

typically did not change temperatures to adjust for different phases of sleep, and could not individualize temperatures based on a user's unique physiology (including gender differences)—both of which are key features of the Eight Sleep Pod. *See id.* at 1–2. The Eight Sleep Pod independently regulates temperature on each side of the bed, which adjusts during sleep based on biological signals of each user, such as sleep stage, heart rate, and respiratory rate. *See* Ex. 7; Ex. 8. Eight Sleep also provides a software using proprietary algorithms which take user's biological signals and optimizes temperature, and the timing of temperature changes:



Cooling and warming for two zones
Sleep your way as each side of the bed adjusts independently

Ex. 7 at 3; Ex. 8.[1]  The Eight Sleep Pod also features a functionality—"Gentle Rise"—to silently wake users using temperature control and vibrations, based on where the user is in his sleep cycle (as opposed to traditional alarms, which wake the user regardless of where he may be in his sleep cycle). *See* Ex. 9.

24.    A peer-reviewed study showed that the Eight Sleep Pod's continuously temperature-regulated bed surface "can (1) significantly modify time spent in specific

---

[1] The Eight Sleep Pod also allows users to manually adjust temperatures using a control panel built into the device. *See* Ex. 8 ("Phone-free temperature control[.] Adjust your temperature instantly with just a tap, no phone needed.").

sleep stages [deep, light, and REM sleep] in certain parts of the night, and (2) enhance cardiovascular recovery during sleep." *Id.* at 1; *see also* Ex. 10.  Another study found that "[a]fter one month sleeping on the Pod, members [users] reported 32% better sleep quality scores on average[,]" measured across "daytime energy scores," number of "sleep interruptions," and speed of "sleep onset." *See* Ex. 11.

25.    Eight Sleep's innovations have been recognized by the numerous patents it has been awarded, including the Asserted Patents.  Eight Sleep's innovations have also been recognized by the numerous awards the company and its products have won. In 2019, the Eight Sleep Pod was selected as one of TIME's 100 Best Inventions for the year.  *See* Ex. 12.  In 2020, the Eight Sleep Pod won a Red Dot Design Award, which is awarded to "products that distinguish themselves with exceptional industrial design." Ex. 13.  In both 2022 and 2023, Eight Sleep was named to Fast Company's (a monthly business magazine) annual lists of the world's most innovative companies. *See* Exs. 14, 15.  In 2025, the Eight Sleep Pod 4 was recognized as the "Best Sleep Tech" by the T3 Awards.  *See* Ex. 16.

<b>Defendants' Infringing Activities</b>

26.    On information and belief, Orion is a Delaware corporation based in California and was founded June 12, 2025.  Orion advertises itself as "the first smart sleep system truly personalized to you based on your sleep data and comfort profile." *See* Ex. 17.

27.    Orion offers the Accused Product which comprises a "Smart Cover" "Control Tower" and "Smart Mode."  Orion states that this system "analyzes your sleep patterns to maintain your ideal temperature all night."  *See* Ex. 18.  An image of the Accused Product is reproduced below, with the base unit on the left, and the pad on the right:

1
2
3
4
5
6
7    Ex. 18.

8          28.    On information and belief, Orion is currently taking pre-orders for the

9    Orion Sleep System, with deliveries expected to begin in December 2025.



1
2
3
4



5    Ex. 18.

6          29.    Functionalities of the Orion Sleep System include, among others:
7    monitoring user's biological signals; regulating temperature independently on both
8    sides of the bed, regulating temperatures depending on the user's stage of sleep; using
9    "AI powered thermoregulation" to maintain your perfect temperature through all
10   sleep stages, thermal wake up alarm, custom bed schedules and daily sleep reports.
11   *See* Ex. 19.

12
13
14
15
16



17
18
19
20
21
22



23
24
25
26
27
28



Ex. 18.



1
2
3
4
5
6
7
8
9
10
11
12
13



14
15
16
17
18
19
20
21
22
23
24
25



26   Ex. 19.
27
28

1
2
3
4
5
6
7



8  Ex. 17.

9       30.    Orion offers a sleep pad to U.S. customers, as demonstrated by the below

10  screenshots:

11
12
13
14
15
16
17
18
19



20  Ex. 19.

21
22
23
24
25
26
27
28



1  Ex. 20 (showing option to select U.S. region and shop in U.S. dollars).

2      31.    Orion acknowledges that it competes directly with Eight Sleep by

3  showing a side-by-side comparison of the competing products.

| FEATURES | EIGHT SLEEP | ORION |
|---|---|---|
| Embedded sleep sensors | ✓ | ✓ |
| Personalized to you | ⊖ | ✓ |
| Comfort options | ⊖ | ✓ |
| Cools as low as 50°F | ⊖ | ✓ |
| Heats as high as 115F | ⊖ | ✓ |
| 5-Stage sleep tracker | ⊖ | ✓ |
| Thermoregulation mode | ⊖ | ✓ |
| Space saving design | ⊖ | ✓ |
| Financing as low as $65/mo | ⊖ | ✓ |
| 100% financing approval | ⊖ | ✓ |

16  Ex. 19.

17      32.    On information and belief, BFG provides product development, quality

18  assurance and supply chain management solutions to Orion, including for the Accused

19  Product.

20      33.    On information and belief, a reasonable company would have

21  investigated whether Eight Sleep owned any patents before performing a direct

22  product comparison.  Thus, to the extent that Defendants lacked actual knowledge of

23  the Asserted Patents, their conduct constituted willful blindness.

24      34.    Additionally, Defendants have been on notice of the Asserted Patents no

25  later than at the time of filing and service of this Complaint.

26      **COUNT I: INFRINGMEENT OF U.S. PATENT NO. 10,792,461**

27      35.    Eight Sleep incorporates by reference the preceding paragraphs as if

28  fully set forth herein.

36.    On information and belief, Defendants directly infringed and are currently infringing, literally and/or under the doctrine of equivalents, at least one claim of the '461 Patent by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Product.  For example, as shown below, the Accused Product practices at least exemplary claim 1 of the '461 Patent.

37.    Claim 1 of the '461 Patent recites:

> A system for regulating a temperature of a portion of a bed device, comprising:
>
> at least one sensor that is a part of said bed device, wherein said at least one sensor is positioned in said portion of a bed device and is configured to detect a biological signal of a user of said bed device when said user is positioned in said portion of said bed device;
>
> a temperature control device operatively coupled to said portion of said bed device, wherein said temperature control device is configured to regulate said temperature of said portion of said bed device; and
>
> a processor communicatively coupled to said at least one sensor and said temperature control device, wherein said processor is configured to identify said user from a plurality of users of said bed device based on said biological signal, and regulate said temperature of said portion of said bed device by said temperature control device based on said user's identity,
>
> wherein biological signal data to identify each user of said plurality of users is stored for access by said processor, wherein said biological signal data of each user is associated with said bed device based upon the detection by said at least one sensor.

38.    The Accused Product is "[a] system for regulating temperature of a portion of a bed device."



Personalized cooling for each sleeper

Dual-zone temperature control allows separate sleep climates for you and your partner.

*See* Ex. 18.

39.    The Accused Product comprises "at least one sensor that is part of said bed device" that is "positioned in said portion of a bed device and is configured to detect a biological signal of a user of said bed device when said user is positioned in said portion of said bed device" in the form of, for example, sensors to track sleep patterns and biometrics.



SLEEP TRACKING & HEALTH

Embedded smart sensors track your sleep pattern and biometrics

Ex. 19.



Automatic temperature adjustment all night

AI and advanced sensors adjust your temperature before you notice you're uncomfortable.

Ex. 18.

40.    The Accused Product comprises "a temperature control device operatively coupled to said portion of said bed device, wherein said temperature control device is configured to regulate said temperature of said portion of said bed device." On information and belief, the Accused Product comprises both a manual means to control temperature, and through a smartphone application.

**Personalized cooling for each sleeper**

Dual-zone temperature control allows separate sleep climates for you and your partner.

Ex. 18.

41.     The Accused Product comprises "a processor communicatively coupled to said at least one sensor and said temperature control device" in the form of, for example, the "Orion App".   On information and belief, the Orion App is communicatively coupled to the Orion "Control Tower," "Smart Cover" and the corresponding sensors. *See* ¶ 27, *supra*.

42.     In the Accused Product, "said processor is configured to identify said user from a plurality of users of said bed device based on said biological signal, and regulate said temperature of said portion of said bed device by said temperature control device based on said user's identity[,]" as shown below:



Ex. 18.

**Finally, a sleep system you can afford**

Orion is the first smart sleep system truly personalized to you based on your sleep data and comfort profile.

| FEATURES | EIGHT SLEEP | ORION |
|---|---|---|
| Embedded sleep sensors | ✓ | ✓ |
| Personalized to you | − | ✓ |

Ex. 17.

43.    The Accused Product comprises a processor that stores "biological signal data to identify each user of said plurality of users, wherein said biological signal data of each user is associated with said bed device based upon the detection by said at least one sensor" for the same reasons discussed in the preceding paragraph. *See* ¶ 42, *supra*.

44.    In addition, or in the alternative, Defendants also indirectly infringe the '461 Patent pursuant to 35 U.S.C. § 271(b) because they induced third parties, including subsidiaries, wholly or partially owned companies, related entities, distributors, and/or retailers, to have made, use, offer for sale, sell, and/or import the Accused Product without Eight Sleep's express consent.  Defendants induced these third parties' direct infringement by advertising, encouraging, instructing, providing support for, and/or operating the Accused Product for or on behalf of said third parties. For example, Defendants publish specifications, support materials, marketing materials, and user guide manuals that explain, advertise, instruct on, or provide support for the Accused Product.

45.    In addition or in the alternative, Defendants have contributed and continues to contribute to the infringement by third parties, of one or more claims of the '240 Patent under 35 U.S.C. § 271(c), by making, selling and/or offering for sale in the United States, and/or importing into the United States, the Accused Product, knowing that those products constitute a material part of the inventions of the '461 Patent, knowing that those products are especially made or adapted to infringe the '461 Patent, and also knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

46.     Defendants' infringement of the '461 Patent has been willful and deliberate based on actual knowledge of Eight Sleep.  Defendants have been willfully blind and/or had actual knowledge of the '461 Patent at least upon being served with this Complaint.

47.     Eight Sleep has been and continues to be damaged by Defendants' infringement of the '461 Patent, and will suffer irreparable injury unless the infringement is enjoined by this Court.

48.     Defendants' conduct in infringing the '461 Patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 12,377,240

49.     Eight Sleep incorporates by reference the preceding paragraphs as if fully set forth herein.

50.     On information and belief, Defendants directly infringed and are currently infringing, literally and/or under the doctrine of equivalents, at least one claim of the '240 Patent by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Product.  For example, as shown below, the Accused Product practices at least claim 29 of the '240 Patent.

51.     Claim 1 of the '240 Patent (from which claim 29 depends) recites:

A method for operating a bed device, the method comprising:

obtaining at least one first biological signal from a first user, the at least one first biological signal indicating a presence of the first user on a first zone of the bed device;

obtaining at least one second biological signal from a second user, the at least one second biological signal indicating a presence of the second user on a second zone of the bed device adjacent the first zone;

generating a plurality of control signals for the bed device in response to the obtained at least one first biological signal and the at least one second biological signal, the plurality of control signals comprising (1) a first instruction to set the temperature of the first zone to a first temperature and (2) a second instruction to set the temperature of the second zone to a second temperature that is different from the first temperature, wherein the first instruction is based at least in part on a first user-specified preference of the first

user and the second instruction is based at least in part on a second user-specified preference of the second user; and

sending the plurality of control signals to at least one respective temperature control device associated with the bed device such that the first and second zones are heated or cooled differently according to the plurality of control signals.

52.    Claim 29 of the '240 Patent recites:

A sleep system comprising a processor and a memory in operative communication with the processor and storing instructions for the processor to implement the method of claim 1.

53.    Using the Accused Product requires "operating a bed device," as the Accused Product is a pad placed on a bed mattress, to be slept on by users:



Ex. 19.

54.    Use of the Accused Product requires "obtaining at least one first biological signal from a first user, the at least one first biological signal indicating a presence of the first user on a first zone of the bed device":

**How does Orion improve my sleep?**  ⌃

Body temperature is the #1 controllable component of sleep quality, but your perfect body temperature constantly changes throughout the night. Orion's embedded sensors sense where you are in your sleep cycle and constantly adjust your body temperature to the perfect temperature based on your sleep cycle.

Ex. 19; *see also* ¶ 39, *supra*.

55.    Use of the Accused Product also requires "obtaining at least one second biological signal from a second user, the at least one second biological signal indicating a presence of the second user on a second zone of the bed device adjacent the first zone[.]" *See* ¶¶ 39, 54, *supra*.

56.    Use of the Accused Product also requires "generating a plurality of control signals for the bed device in response to the obtained at least one first biological signal and the at least one second biological signal, the plurality of control signals comprising (1) a first instruction to set the temperature of the first zone to a first temperature and (2) a second instruction to set the temperature of the second zone to a second temperature that is different from the first temperature, wherein the first instruction is based at least in part on a first user-specified preference of the first user and the second instruction is based at least in part on a second user-specified preference of the second user[.]" This is evidenced by the biological signals obtained from the Orion "Smart Cover" (*see* ¶ 27, *supra*) by the "Orion App" (*see* ¶ 41 *supra*), which in turn adjusts temperatures for the two users of the Accused Product, independently, based on each user's specified preferences (*see id.*).    Additional exemplary evidence includes:

**Smart Mode**

**Annual Subscription**
$20/mo*    ✓

✓ AI-powered smart temperature adjustment
✓ Thermal wake up alarm
✓ Custom bedtime schedules
✓ Daily sleep reports

Ex. 18.

57.     Use of the Accused Product also requires "sending the plurality of control signals to at least one respective temperature control device associated with the bed device such that the first and second zones are heated or cooled differently according to the plurality of control signals."  *See* ¶ 39, *supra*.

58.     The Accused Product comprises "a processor and a memory in operative communication with the processor and storing instructions for the processor to implement the method of claim 1."  *See* ¶¶ 39-42, *supra*.

59.     In addition, or in the alternative, Defendants also indirectly infringe the '240 Patent pursuant to 35 U.S.C. § 271(b) because they induced third parties, including subsidiaries, wholly or partially owned companies, related entities, distributors, and/or retailers, to have made, use, offer for sale, sell, and/or import the Accused Product without Eight Sleep's express consent.  Defendants induced these third parties' direct infringement by advertising, encouraging, instructing, providing support for, and/or operating the Accused Product for or on behalf of said third parties.  For example, Defendants publish specifications, support materials, marketing materials, and user guide manuals that explain, advertise, instruct on, or provide support for the Accused Product.

60.     In addition or in the alternative, Defendants have contributed and continues to contribute to the infringement by third parties, of one or more claims of the '240 Patent under 35 U.S.C. § 271(c), by making, selling and/or offering for sale

in the United States, and/or importing into the United States, the Accused Product, knowing that those products constitute a material part of the inventions of the '240 Patent, knowing that those products are especially made or adapted to infringe the '240 Patent, and also knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

61.    Defendants' infringement of the '240 Patent has been willful and deliberate based on actual knowledge of Eight Sleep. Defendants have been willfully blind and/or had actual knowledge of the '240 Patent at least upon being served with this Complaint.

62.    Eight Sleep has been and continues to be damaged by Defendants' infringement of the '240 Patent, and will suffer irreparable injury unless the infringement is enjoined by this Court.

63.    Defendants' conduct in infringing the '240 Patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 12,370,339

64.    Eight Sleep incorporates by reference the preceding paragraphs as if fully set forth herein.

65.    On information and belief, Defendants directly infringed and are currently infringing, literally and/or under the doctrine of equivalents, at least one claim of the '339 Patent by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Product. For example, as shown below, the Accused Product practices at least exemplary claim 29 of the '339 Patent.

66.    Claim 1 of the '339 Patent (on which claim 29 depends) recites:

A method for operating a bed device, the method comprising:

obtaining at least one first biological signal from a user, the at least one first biological signal indicating a presence of the user on the bed device;

determining a first control signal and a time to send the first control signal to the bed device, wherein the first control signal comprises a first instruction to turn the bed device on or off and a second instruction to set a temperature of the bed device to a first temperature, and wherein the

time to send the first control signal to the bed device is based on a bedtime associated with the user, the presence of the user, or both;

sending the first control signal to the bed device at the determined time to turn the bed device on or off and set the bed device to the first temperature;

obtaining, while the bed device is turned on, at least one second biological signal from the user, wherein the at least one second biological signal is different from the at least one first biological signal;

determining a second control signal, wherein the second control signal comprises an instruction to the bed device to adjust the temperature of the bed device to a second temperature in response to the obtained at least one second biological signal; and

sending the second control signal to the bed device to adjust the temperature of the bed device to the second temperature.

67.    Claim 29 of the '339 Patent recites:

A sleep system comprising a processor and a memory in operative communication with the processor and storing instructions for the processor to implement the method of claim 1.

68.    Using the Accused Product requires "operating a bed device," as the Accused Product is a pad placed on a bed mattress, to be slept on by users. *See* ¶ 53 *supra*.

69.    Using the Accused Product requires "obtaining at least one first biological signal from a user, the at least one first biological signal indicating a presence of the user on the bed device[.]" *See* ¶¶ 39-42, *supra*.

70.    Using the Accused Product requires "determining a first control signal and a time to send the first control signal to the bed device, wherein the first control signal comprises a first instruction to turn the bed device on or off and a second instruction to set a temperature of the bed device to a first temperature, and wherein the time to send the first control signal to the bed device is based on a bedtime associated with the user, the presence of the user, or both[.]"  For example, Dr. Michael Bruce ("Chief Sleep Officer" of Orion) states in a video on Orion's website states Orion determining your body's "thermoregulation set point" and "thermoregulating technology that kicks in to cool or heat your body to your personal

perfect temperature." Ex. 17 (embedded video at 1:04). Further exemplary evidence is shown below.



*See* Ex. 18.

71.    Using the Accused Product requires "sending the first control signal to the bed device at the determined time to turn the bed device on or off and set the bed device to the first temperature." *See* ¶ 70, *supra*.

72.    Using the Accused Product requires "obtaining, while the bed device is turned on, at least one second biological signal from the user, wherein the at least one second biological signal is different from the at least one first biological signal[.]" *See* ¶¶ 39-42, *supra*.

73.    Using the Accused Product requires "determining a second control signal, wherein the second control signal comprises an instruction to the bed device to adjust the temperature of the bed device to a second temperature in response to the obtained at least one second biological signal[.]" *See* ¶¶ 39-42, *supra*.

74.    Using the Accused Product requires "sending the second control signal to the bed device to adjust the temperature of the bed device to the second temperature." *See* ¶¶ 39-42, *supra*.

75.    The Accused Product comprises "a processor and a memory in operative communication with the processor and storing instructions for the processor to implement the method of claim 1." *See* ¶¶ 39-42, *supra*.

76.    In addition, or in the alternative, Defendants also indirectly infringe the '339 Patent pursuant to 35 U.S.C. § 271(b) because they induced third parties,

including subsidiaries, wholly or partially owned companies, related entities, distributors, and/or retailers, to have made, use, offer for sale, sell, and/or import the Accused Product without Eight Sleep's express consent. Defendants induced these third parties' direct infringement by advertising, encouraging, instructing, providing support for, and/or operating the Accused Product for or on behalf of said third parties. For example, Defendants publish specifications, support materials, marketing materials, and user guide manuals that explain, advertise, instruct on, or provide support for the Accused Product.

77.    In addition or in the alternative, the Defendants have contributed and continues to contribute to the infringement by third parties, of one or more claims of the '339 Patent under 35 U.S.C. § 271(c), by making, selling and/or offering for sale in the United States, and/or importing into the United States, the Accused Product, knowing that those products constitute a material part of the inventions of the '339 Patent, knowing that those products are especially made or adapted to infringe the '339 Patent, and also knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

78.    Defendants' infringement of the '339 Patent has been willful and deliberate based on actual knowledge of Eight Sleep. Defendants have been willfully blind and/or had actual knowledge of the '339 Patent at least upon being served with this Complaint.

79.    Eight Sleep has been and continues to be damaged by Defendants' infringement of the '339 Patent, and will suffer irreparable injury unless the infringement is enjoined by this Court.

80.    Defendants' conduct in infringing the '339 Patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

### **PRAYER FOR RELIEF**

81. WHEREFORE, Eight Sleep respectfully requests the Court to enter judgment in favor of Eight Sleep and against the Defendants as to all claims asserted herein as follows:

    A.    That Defendants infringed each of the Asserted Patents;

    B.    That Defendants' infringement of each of the Asserted Patents has been willful;

    C.    That Eight Sleep be awarded damages, including without limitation on the basis of a reasonable royalty and/or for lost profits, adequate to compensate it for Defendants' past infringement and any continuing or future infringement of the Asserted Patents until the date such judgment is entered, including pre- and post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284;

    D.    That any award of damages be enhanced under 35 U.S.C. § 284 because of Defendants' willful infringement;

    E.    That this case be declared an exceptional case within the meaning of 35 U.S.C. § 285 and that Eight Sleep be awarded the attorneys' fees, costs, and expenses incurred in connection with this action;

    F.    That Eight Sleep be awarded a preliminary injunction;

    G.    That Eight Sleep be awarded either a permanent injunction, or, at least, a compulsory ongoing license fee; and

    H.    That Eight Sleep be awarded such other and further relief at law or equity as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

82. Eight Sleep hereby demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and L.R. 38-1.

1

2

Dated: October 9, 2025

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

3

By:  /s/ *Ryan R. Smith*

4

Ryan R. Smith
Naoya Son
Alex Miller

5

6

*Attorneys for Plaintiff*
Eight Sleep Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28