Eamonn Gardner (CA SBN 310834)
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
Phone: (720) 566-4000
Fax: (720) 566-4099
egardner@cooley.com

Alexandra Mayhugh (CA SBN 300446)
COOLEY LLP
355 South Grand Avenue, Suite 900
Los Angeles, CA 90071
Phone: (213) 561-3250
Fax: (213) 561-3244
amayhugh@cooley.com

*Counsel for Defendants Orion Longevity Inc.
and Blue Fuzion Group Ltd.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| EIGHT SLEEP INC., <br><br> Plaintiff, <br><br> v. <br><br> ORION LONGEVITY INC., and BLUE FUZION GROUP LTD. <br><br> Defendants. | Case No. 2:25-cv-09685-SB-RAO <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** <br><br> **[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]** <br><br> Hon. Stanley Blumenfeld, Jr. <br> Date: February 27, 2026 <br> Time: 8:30 a.m. <br> Courtroom: 6C |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL BACKGROUND ................................................................ 2

    A.    Eight Sleep's Infringement Allegations .................................... 2

    B.    The Accused Orion Sleep System Was Not Complete When the Original Complaint Was Filed ................................................... 3

    C.    BFG is a Foreign Entity That Has No Meaningful Contacts with California or the United States ................................................... 4

III.  LEGAL STANDARD .......................................................................... 4

    A.    Subject Matter Jurisdiction ....................................................... 6

    B.    Personal Jurisdiction ................................................................. 6

IV.   ARGUMENT ...................................................................................... 7

    A.    Subject Matter Jurisdiction Does Not Exist Since the Accused Orion Sleep System's Design Was "Fluid" When the Complaint Was Filed ................................................................... 7

    B.    Eight Sleep's False Advertising Claims Cannot Create Jurisdiction ............................................................................. 10

    C.    The Court Does Not Have Personal Jurisdiction Over BFG ............. 11

        1.    The Court Does Not Have General Jurisdiction Over BFG ..... 11

        2.    The Court Does Not Have Specific Jurisdiction Over BFG .... 11

            a.    BFG Does Not Place Products into Any Stream of Commerce Directed to California or the United States ................................................................. 12

            b.    BFG Has Not Purposefully Availed Itself of Any Privileges or Benefits of California, or Directed Any Activities Toward California .................................. 13

            c.    Exercising Specific Jurisdiction Over BFG Would Be Unreasonable .......................................................... 15

        3.    BFG is Not Subject to Personal Jurisdiction Under Rule 4(k)(2) ............................................................................ 16

        4.    Jurisdictional Discovery Is Not Warranted ............................. 17

    D.    Eight Sleep's False Advertising Claims Are Not Adequately Pled ........................................................................................ 18

        1.    Eight Sleep Failed to Plead Adequate Facts that Orion's Statements About the Accused Orion Sleep System were False or Misleading When Made ............................................. 19

        2.    Eight Sleep's UCL Claim Independently Fails ...................... 20

V.    CONCLUSION ................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3G Licensing, S.A. v. Lenovo Group Ltd.*,
  No. 17-84-LPS, 2019 WL 3974539 (D. Del. Aug. 22, 2019) ........................... 12

*AEM (Holdings), Inc. v. Cooper Industries, Inc.*,
  No. V 04-594-ABC, 2005 WL 5950104 (C.D. Cal. July 12, 2005) ................... 5

*AMA Multimedia, LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020) ........................................................................ 5, 7

*AMA Multimedia LLC v. Wanat*,
  No. CV-15-01674-PHX-ROS, 2017 WL 5668025 (D. Ariz. Sept.
  29, 2017) .............................................................................................................. 7

*Association of American Medical Colleges v. United States*,
  217 F.3d 770 (9th Cir. 2000) .............................................................................. 5

*AstraZeneca Pharms. LP v. Apotex Corp.*,
  669 F.3d 1370 (Fed. Cir. 2012) ....................................................................... 6, 9

*BHRS Group, LLC v. Brio Water Tech., Inc.*,
  553 F. Supp. 3d 793 (C.D. Cal. 2021) .............................................................. 20

*BNSF Ry. Co. v. Tyrrell*,
  581 U.S. 402 (2017) ............................................................................................ 7

*Bodenburg v. Apple Inc.*,
  146 F.4th 761 (9th Cir. 2025) ...................................................................... 18, 19

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) .......................................................................... 18

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .......................................................................................... 16

*Celgard, LLC v. SK Innovation Co.*,
  792 F.3d 1373 (Fed. Cir. 2015) ............................................................... 11, 14, 15

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) ............................................................................ 21

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014) ................................................................ 6, 7, 11

*Doe v. American National Red Cross,*
   112 F.3d 1048 (9th Cir. 1997) ................................................ 14

*Doe v. CVS Pharm., Inc.,*
   982 F.3d 1204 (9th Cir. 2020) ................................................ 21

*Drayton v. Eastlink Prods., Inc.,*
   No. LA 17-CV-06408-VAP, 2018 WL 5266870 (C.D. Cal. Mar.
   20, 2018) .................................................................................... 5

*Elecs. For Imaging, Inc. v. Coyle,*
   340 F.3d 1344 (Fed. Cir. 2003) .............................................. 12

*Engasser v. Tetra Tech, Inc.,*
   519 F. Supp. 3d 703 (C.D. Cal. 2021) .................................... 18

*Engasser v. Tetra Tech, Inc.,*
   2022 WL 3334632 (9th Cir. Aug. 12, 2022) ........................... 18

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
   528 U.S. 167 (2000) ................................................................ 10

*Garcia v. Sony Computer Entertainment Am., LLC,*
   859 F. Supp. 2d 1056 (N.D. Cal. 2012) .................................. 19

*General Atomic Co. v. United Nuclear Corp.,*
   655 F.2d 968 (9th Cir. 1981) .................................................... 5

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
   564 U.S. 915 (2011) ................................................................ 11

*Grupo Dataflux v. Atlas Glob. Grp.,*
   541 U.S. 567 (2004) .................................................................. 6

*Hanson v. Denckla,*
   357 U.S. 235 (1958) ................................................................ 15

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Jara v. Aurora Loan Servs.*,
  852 F. Supp. 2d 1204 (N.D. Cal. 2012) ............................................................. 21

*Kemp v. Selene Fin. LP*,
  No. CV 11-00837 GAF, 2011 WL 13376982 (C.D. Cal. Nov. 2, 2011) ............................................................................................................. 21

*Lightfoot v. Cendant Mortgage Corp.*,
  580 U.S. 82 (2017) ............................................................................................... 4

*McGinity v. Procter & Gamble Co.*,
  69 F.4th 1093 (9th Cir. 2023) ............................................................................ 18

*Mitan v. Feeney*,
  497 F. Supp. 2d 1113 (C.D. Cal. 2007) ............................................................. 17

*Moss v. Infinity Insurance Co.*,
  197 F. Supp. 3d 1191 (N.D. Cal. 2016) ............................................................. 21

*Nazemi v. Specialized Loan Servicing, LLC*,
  637 F. Supp. 3d 856 (C.D. Cal. 2022) ............................................................... 21

*Nestlé USA, Inc. v. Crest Foods, Inc.*,
  No. LA CV16-07519 JAK (AFMx), 2017 WL 3267665 (C.D. Cal. July 28, 2017) ..................................................................................................... 5, 6

*New World Int'l, Inc. v. Ford Glob. Techs., LLC*,
  859 F.3d 1032 (Fed. Cir. 2017) ............................................................................ 6

*Nuance Communications v. Abbyy Software House*,
  626 F.3d 1222 (Fed. Cir. 2010) ............................................................................ 4

*Oestreicher v. Alienware Corp.*,
  322 F. App'x 489 (9th Cir. 2009) ...................................................................... 20

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006) .............................................................................. 5

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Pinkerton Tobacco Co. v. Art Factory AB*,
   No. 2:20-cv-01322-SB-MRW, 2021 WL 4776349 (C.D. Cal. June
   18, 2021) ..................................................................................................... 12

*Prasco, LLC v. Medicis Pharm. Corp.*,
   537 F.3d 1329 (Fed. Cir. 2008) ...................................................................... 6

*PrimeSource Bldg. Prods., Inc. v. Phillips Screw Co.*,
   No. 3-07-CV-0303-M, 2008 WL 779906 (N.D. Tex. Mar. 25, 2008) ......... 12, 13

*Robinson v. Dalton*,
   107 F.3d 1018 (3d Cir. 1997) ......................................................................... 5

*Saudi v. Northrop Grumman Corp.*,
   427 F.3d 271 (4th Cir. 2005) ........................................................................ 17

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ........................................................................ 14

*Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*,
   363 F.3d 1361 (Fed. Cir. 2004) ............................................................... 6, 8, 9

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) ...................................................................... 18

*Synthes (U.S.A.) v. GM Dos Reis Jr. Ind. Com. de Equip. Medico*,
   563 F.3d 1285 (Fed. Cir. 2009) .................................................................... 17

*Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*,
   982 F.2d 1520 (Fed. Cir. 1992) ...................................................................... 8

*Texas v. United States*,
   523 U.S. 296 (1998) ........................................................................................ 6

*Trader Joe's Co. v. Trader Joe's United*,
   150 F.4th 1040 (9th Cir. 2025) ..................................................................... 20

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors
   USA, Inc.*,
   617 F.3d 1296 (Fed. Cir. 2010) .................................................................... 8, 9

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ..................................................................5, 12, 16

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,
    848 F.3d 1346 (Fed. Cir. 2017) ....................................................... 16

*XpertUniverse, Inc. v. Cisco Sys., Inc.*,
    No. 09-157-RGA, 2012 WL 292362, at *3 (D. Del. Jan. 20, 2012)....................9

*Yovev v. State Dep't Health Hum. Servs. Dep't*,
    No. CV07-1029-PSG(VBKx), 2007 WL 9711546 (C.D. Cal. Oct.
    16, 2007)...............................................................................5, 9, 10

**Statutes**

15 U.S.C. § 1125(a) ......................................................................... 18

Cal. Bus. & Prof. Code
    § 17200 .................................................................................... 18
    § 17500 .................................................................................... 18

**Other Authorities**

Federal Rule of Civil Procedure
    4(k)(2) ...........................................................................2, 7, 16, 17
    9(b).......................................................................................*passim*
    12(b)(1) ...........................................................................1, 4, 5, 10
    12(b)(2) ....................................................................................1, 5
    12(b)(6) .......................................................................................1

Defendants Orion Longevity Inc. ("Orion") and Blue Fuzion Group Ltd. ("BFG") (collectively "Defendants") move to dismiss Plaintiff Eight Sleep Inc.'s ("Plaintiff") First Amended Complaint (Dkt. 25) ("FAC"), pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(2), for lack of personal jurisdiction.  Defendants also move to dismiss Plaintiff's false advertising claims pursuant to Rules 9(b) and 12(b)(6) for failure to state a claim.

## I.    INTRODUCTION

This action should be dismissed for what it is: a *premature* attempt to use litigation to keep an innovative startup out of a growing market.  Rather than undertaking a proper analysis before filing this litigation, Eight Sleep sued Defendants over a smart sleep system that was still under development at the time this action was filed, and seeks to pull BFG, a foreign service provider with no U.S. presence, into this Court based solely on speculative allegations.

First, Eight Sleep cannot establish Article III jurisdiction because the Accused Orion Sleep System was still under development when the original complaint ("Original Complaint") was filed on October 9, 2025.[1]  As of October 9, the Accused Orion Sleep System's ███████████████████████████████████████ ███████████████████████████ (Zwiebel Decl. ¶¶8-9, 12.) ████ ████████████████████████████████████████████████████████ ████████████████████████████████████ as required by Plaintiff's allegations. (*Id.* ¶8.)  Under Federal Circuit precedent, claims based on an incomplete and evolving product lack the immediacy and reality required for Article III jurisdiction, seek an impermissible advisory opinion, requiring dismissal under Rule 12(b)(1). Eight Sleep attempts to save its case by pointing to website materials and social media

---

[1] The "Accused Orion Sleep System" refers to an Orion Sleep System with smart feature functionality that collects user feedback data through sensors, transmits said data, and regulates temperature based on user sensor data, which Eight Sleep purports to accuse of infringement.  As discussed herein, this is distinguished from earlier versions of Orion's system ████████████████████████████████████████████████ ████████████████████ hich are not accused of infringement.

posts to argue that the Accused Orion Sleep System must have been tested in the United States before October 2025.  But ███████████████████████████████ ████████████████████████████████████████████████████████ Eight Sleep has no factual basis for accusing those earlier units of infringement. Likewise, ███████████████████████████████████████████████████████ ████████████████████████████████████████. (*Id.* ¶10.)

Second, Eight Sleep cannot establish personal jurisdiction over BFG, a Hong Kong company with no incorporation, offices, employees, operations, or assets in the United States.  (McConnochie Decl. ¶¶4, 8.)  BFG does not manufacture, import, distribute, sell, or offer to sell the Accused Orion Sleep System in the United States, and plays no role in the design or development of software or firmware for the accused system.  (*Id.* ¶¶6, 10-11.)  The FAC offers only bare conclusions that indiscriminately lump BFG together with Orion, vague references to "stream of commerce," and invokes Rule 4(k)(2) without identifying a single act by BFG in California or in the United States.  These allegations are insufficient to establish either general or specific jurisdiction.

Lacking sufficient basis for its original claims, Eight Sleep filed a FAC adding three false advertising causes of action.  As an initial matter, these additional causes of action are moot because an amended complaint cannot cure a lack of Article III jurisdiction, and Eight Sleep's amendments do nothing to remedy the fundamental defects present at the outset of this action.  In addition, even if subject matter jurisdiction did exist (it does not), Eight Sleep's false advertising claims fall far short of the heightened pleading requirements of Rule 9(b).

## II.    FACTUAL BACKGROUND

### A.    Eight Sleep's Infringement Allegations

Eight Sleep alleges Defendants infringe at least one claim of U.S. Patent Nos. 10,792,461, 12,377,240, and 12,370,339 (collectively, the "Asserted Patents"). (FAC ¶¶49, 63, 78.)  The Asserted Patents claim a bed system that uses sensors to

detect biological signals and a processor to generate instructions that adjust temperature across different sleep zones on the bed. (*Id.* ¶¶50-51, 64-65, 79-80.) A core feature of the claims is the processor's role, which depends on software and firmware to receive sensor data, process it, and control bed temperature. (*See id.*)

Eight Sleep alleges Defendants infringe by "making, using, selling, offering for sale, and/or importing" a smart feature version of the Orion Sleep System. (FAC ¶¶5, 27-37, 49, 63, 78.) Eight Sleep describes the accused system as having features such as biological-signal monitoring, user identification, independent temperature regulation across sleep zones, sleep-pattern analysis, and "AI powered thermoregulation." (*Id.* ¶¶27-37.) Eight Sleep alleges that these functionalities give rise to claims of infringement. (*See id.* ¶¶49-92.)

## B.    The Accused Orion Sleep System Was Not Complete When the Original Complaint Was Filed

The Accused Orion Sleep System did not exist in any completed or functional state at the time the Original Complaint was filed. The accused system remained in active development on October 9, 2025. (Zwiebel Decl. ¶7.) ████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████ (*Id.* ¶¶8, 10-12.) ████████████████████████████████████████████████████████ ██████ (*Id.* ¶9.) ████████████████████████████████████████ ████████████████████████████████████████ (*Id.* ¶¶10-12.)

On the Orion website, Orion includes reviews of early prototypes of its mattress cover. (*Id.* ¶11.) ████████████████████████████████████ ████████████████████████████████████████ (*Id.*) ████████████████ ████████████████████████████████████████████████████████ ████████████████ (*Id.* ¶¶8, 12.)

### C. BFG is a Foreign Entity That Has No Meaningful Contacts with California or the United States

BFG is an independently owned and operated Hong Kong company. (McConnochie Decl. ¶¶4-5.)  Orion does not control BFG's operations, and BFG does not have any presence in California or anywhere in the United States. (*Id*. ¶¶5, 8, 13-15.)  BFG is not incorporated or registered in any state, and has no employees, offices, operations, or assets in the United States.  (*Id.* ¶8.)  BFG does not manufacture, market, sell, import, distribute, or offer for sale any Orion products into the United States, and has no control over any distribution channel, logistics provider, retailer, or customer relationship involving the U.S. market.  (*Id.* ¶6; Zwiebel Decl. ¶14.)  BFG does not target U.S. sleep system consumers (nor U.S. consumers more generally) in any way.  (McConnochie Decl. ¶¶6, 14.)

BFG's work for Orion occurs entirely overseas ███████████████

████████████████████████████████████████

█████ (*Id.* ¶9.) ████████████████████████████

████████████████████████████████████████

██████  (*Id.* ¶10.)  Moreover, BFG has no involvement in commercial activities relating to the accused functionality or in the alleged infringing conduct Plaintiff alleges. (*Id.* ¶¶6, 9, 15.)

## III. LEGAL STANDARD

"A court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017) (citation omitted).  In patent cases, Federal Circuit precedent governs whether subject matter and personal jurisdiction exists. *Nuance Commc'ns v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010).

Rule 12(b)(1) requires dismissal of a complaint where the court lacks subject matter jurisdiction.  The plaintiff bears the burden of establishing that subject matter

jurisdiction is proper. *Yovev v. State Dep't Health Hum. Servs. Dep't*, No. CV07-1029-PSG(VBKx), 2007 WL 9711546, at *1 (C.D. Cal. Oct. 16, 2007). A federal court "is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *General Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968-69 (9th Cir. 1981).

Rule 12(b)(2) permits dismissal for lack of personal jurisdiction. The plaintiff bears the burden of demonstrating that the court has jurisdiction over a defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Personal jurisdiction "protects the defendant against the burdens of litigating in a distant or inconvenient forum" in which the defendant has no meaningful connection. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980).

To resolve Rule 12(b)(1) and/or 12(b)(2) challenges, the Court may consider declarations and resolve factual disputes bearing on jurisdiction, without converting the motion into one for summary judgment. *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997). The Court may also decide a Rule 12(b)(1) or 12(b)(2) motion based on the parties' written submissions, including an affidavit or declaration. *Drayton v. Eastlink Prods., Inc.*, No. LA 17-CV-06408-VAP, 2018 WL 5266870, at *3 (C.D. Cal. Mar. 20, 2018). The Court "is not required to accept all of the non-moving party's factual allegations as true[,]" and the movant may submit evidence demonstrating that jurisdiction is lacking. *AEM (Holdings), Inc. v. Cooper Indus., Inc.*, No. V 04-594-ABC (VBKx), 2005 WL 5950104, at *2 (C.D. Cal. July 12, 2005). Once evidence is submitted, the burden shifts to the plaintiff to present affidavits or other competent evidence sufficient to establish jurisdiction. *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778 (9th Cir. 2000). A plaintiff must make a prima facie showing of jurisdiction, a standard that "is not toothless." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020) (citation omitted). A plaintiff "cannot simply rest on the bare allegations of its complaint" when those allegations are contradicted by affidavit. *Id.* (citation omitted); *Nestlé USA, Inc. v.*

*Crest Foods, Inc.*, No. LA CV16-07519 JAK (AFMx), 2017 WL 3267665, at *6-8 (C.D. Cal. July 28, 2017).

### A.    Subject Matter Jurisdiction

"Article III limits federal jurisdiction to suits that address a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.*, 363 F.3d 1361, 1372 (Fed. Cir. 2004) (citation modified). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Tex. v. United States*, 523 U.S. 296, 300 (1998) (citation modified). Subject matter jurisdiction "depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp.*, 541 U.S. 567, 570-71 (2004). Later developments cannot cure a jurisdictional defect that existed at the time the complaint was filed. *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1337 (Fed. Cir. 2008). Courts have the authority to dismiss actions for patent infringement for lack of subject matter jurisdiction where the accused product is still under development at the time of filing, because any infringement analysis would necessarily be speculative. *See Sierra Applied Scis.*, 363 F.3d at 1378-80 (affirming dismissal where the accused product's design "was fluid and indeterminate on [the filing] date[,]" making the claims unripe); *see also AstraZeneca Pharms. LP v. Apotex Corp.*, 669 F.3d 1370, 1380-81 (Fed. Cir. 2012) (holding claims unripe where alleged infringement depended on "contingent future events") (citation omitted).

### B.    Personal Jurisdiction

Federal courts look to state law to determine the scope of their jurisdiction over a party to an action. *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). In California, the long-arm statute authorizes courts to exercise personal jurisdiction to the full extent allowed by the state and federal Constitutions, limiting the analysis to whether "the assertion of personal jurisdiction comports with due process." *New*

*World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017) (citation omitted).  Due process requires that a defendant have "certain minimum contacts" with the forum such that exercising jurisdiction "does not offend traditional notions of fair play and substantial justice."  *Daimler*, 571 U.S. at 126 (citation modified).

Courts may exercise either general or specific personal jurisdiction. *Id.* at 121-22.  General jurisdiction exists over a corporation only when its operations in the forum are so continuous and systematic that the corporation is essentially "at home" there.  *Id.* at 127, 134-35 (citation omitted).  This standard applies equally to foreign corporations, whose affiliations with the forum must be so exceptional that they render the entity "essentially at home in the forum State."  *Id.* at 127 (citation omitted).  Absent exceptional circumstances, a corporation is "at home" only in its place of incorporation and its principal place of business.  *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017).  Specific jurisdiction exists only where the claims "arise out of or relate to" the defendant's contacts with the forum.  *Daimler*, 571 U.S. at 127 (citation omitted).

Because Eight Sleep invokes Rule 4(k)(2), it must show that BFG has "unusually extensive contacts with the United States" as a whole.  *AMA Multimedia LLC v. Wanat*, No. CV-15-01674-PHX-ROS, 2017 WL 5668025, at *5 (D. Ariz. Sept. 29, 2017), *aff'd*, 970 F.3d 1201 (9th Cir. 2020).

## IV.    ARGUMENT

### A.    Subject Matter Jurisdiction Does Not Exist Since the Accused Orion Sleep System's Design Was "Fluid" When the Complaint Was Filed

Subject matter jurisdiction does not exist in this action because Eight Sleep has not and cannot allege any facts establishing a justiciable act of infringement that occurred on or before the filing of the Original Complaint.

Eight Sleep bases its infringement allegations on a version of the Orion Sleep System with smart feature functionality (the Accused Orion Sleep System).  (FAC

1     ¶¶5, 27-37, 49, 63, 78.) ██████████████████████████████

2     ████████████████████████████████████████████████████████

3     ███████████████████████████████ (Zwiebel Decl. ¶8.)  Where, as here,

4     the accused product is incomplete, undergoing changes, and/or lacks final

5     functionality, making any infringement analysis necessarily speculative, courts

6     routinely dismiss infringement claims for lack of subject matter jurisdiction.  *See*

7     *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1527 (Fed. Cir.

8     1992).  In *Telectronics*, for example, the court held there was no subject matter

9     jurisdiction where the accused device was still in early trials and subject to change,

10    making any infringement analysis at the time of filing too speculative.  982 F.2d at

11    1527.  In *Sierra*, the court likewise held that jurisdiction was lacking because the

12    accused power supply's design was "fluid" and not fixed at the time of filing, making

13    it impossible to determine whether the final product infringed.  363 F.3d at 1379-80.

14    Both cases make clear that when a product is under development when the complaint

15    is filed, a court cannot know whether the accused product will ever embody the

16    asserted claims, and thus Article III prohibits the exercise of jurisdiction.

17         During the meet-and-confer process, Eight Sleep raised four arguments for

18    maintaining subject matter jurisdiction.

19         First, Eight Sleep pointed to *Transocean Offshore Deepwater Drilling, Inc. v.*

20    *Maersk Contractors USA, Inc.*, 617 F.3d 1296 (Fed. Cir. 2010) for the proposition

21    that a product does not have to be manufactured to be accused of infringement.  (Ex.

22    1, R. Smith Email (12/1/25) at 1.)  But the *Transocean* decision is unrelated to subject

23    matter jurisdiction, and the facts there bear no relationship to the situation here.  In

24    *Transocean*, subject matter jurisdiction was not at issue because both parties agreed

25    an offer to sell had occurred and, unlike here, that schematics that existed at the time

26    of the offer to sell were sufficiently complete for an infringement analysis.  617 F.3d

27    at 1308-11.  Here, nothing exists that is comparable to the schematics in *Transocean*.

28    Orion's preorder involved no schematics or design documents, and ███████████

1  ████████████████████████████████████████ Thus, unlike

2  *Transocean*, at the time the Original Complaint was filed here it was impossible to

3  evaluate infringement—making the exercise of subject matter jurisdiction

4  speculative and improper. *Sierra Applied Scis.*, 363 F.3d at 1380.

5     Second, Eight Sleep pointed to reviews on Orion's website. (Ex. 1 at 1, 7.)

6  But as Mr. Zwiebel's declaration confirms, the reviews on Orion's website relate to

7  prototypes ███████████ ██ ████████████████████████

8  ████████████████████████ (Zwiebel Decl. ¶11.) Eight Sleep has not

9  identified any factual basis for accusing those earlier prototypes of infringement.

10 *Yovev,* 2007 WL 9711546, at *1 (plaintiff's burden).

11    Third, Eight Sleep pointed to pre-order information on Orion's website. (Ex.

12 1 at 7.) But Orion accepting pre-orders for its *anticipated* product does not change

13 the analysis. The Federal Circuit has held that claims based on products still under

14 development are not justiciable because they depend on contingent future events that

15 may never occur. *AstraZeneca*, 669 F.3d at 1380-81. ████████████████

16 ████████████████████████████████████████████

17 █████████████████ (Zwiebel Decl. ¶7.) Indeed, as of the filing of the Original

18 Complaint, ████████████████████████████████████

19 ████████████████████████████████████████████

20 █████████████████████████████ There was not any defined

21 product that could have been made or used when the Original Complaint was filed.

22 *XpertUniverse, Inc. v. Cisco Systems, Inc.* is instructive. No. 09-157-RGA, 2012 WL

23 292362, at *3 (D. Del. Jan. 20, 2012) (unreleased products can only support an

24 infringement claim if they have actually been "made or used as of the date the

25 [complaint] was filed"—there can be no claim where a product "is in development,

26 but has not reached the stage where it has been made or used.").

27    Finally, Eight Sleep argued that Orion must have conducted some form of

28 testing in the United States. (Ex. 1 at 1.) This argument is logically and factually

1   baseless.  Companies are free to conduct testing outside of the United States and,

2   more fundamentally, ███████████████████████████████████████████

3   ████████████████████████████████████████████████████████████████

4   ███████████████████████████████████████████   Once again, Eight Sleep has

5   no factual basis for alleging otherwise.  *Yovev*, 2007 WL 9711546, at *1 (plaintiff's

6   burden).

7        Tellingly, despite full awareness of Defendants arguments on this issue (*see*

8   Dkt. 23-1) Eight Sleep added no allegations to the FAC suggesting that subject matter

9   jurisdiction was proper when the Original Complaint was filed.  This is because there

10  is no meaningful dispute that when Eight Sleep filed the Original Complaint there

11  was ████████████████████████  that could be analyzed for infringement—and

12  Eight Sleep was merely seeking an advisory opinion that a hypothetical future

13  product might infringe its patents.  Article III prohibits such suits, and the case must

14  be dismissed under Rule 12(b)(1).

15       **B.    Eight Sleep's False Advertising Claims Cannot Create Jurisdiction**

16       The FAC tacks on three new causes of action, alleging that Orion

17  misrepresented the features and availability of the Accused Orion Sleep System to

18  consumers.  These new allegations cannot create subject matter jurisdiction for two

19  reasons.

20       First, Eight Sleep's new allegations are based on statements made well after

21  the filing date of the Original Complaint. (FAC ¶¶29-35, 39-47.)  Standing and

22  subject matter jurisdiction must exist at the outset of litigation and cannot be cured

23  by amendment or post-filing events.  *See Friends of the Earth, Inc. v. Laidlaw Env't*

24  *Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000).

25       Second, as set forth below in Section IV.D., Eight Sleep's false advertising

26  claims cannot be the basis for jurisdiction because they are inadequately pled and

27  should be dismissed.

28

**C.**     **The Court Does Not Have Personal Jurisdiction Over BFG**

**1.**     **The Court Does Not Have General Jurisdiction Over BFG**

There is no basis for general jurisdiction over BFG.  Eight Sleep concedes that BFG is organized under Hong Kong law and maintains its principal place of business there.  (FAC ¶4.)  Following *Daimler*, a corporation is ordinarily "at home" only in its place of incorporation and principal place of business, and general jurisdiction does not attach elsewhere.  571 U.S. at 127 (citation omitted).

This case present no "exceptional" circumstances justifying exercising general jurisdiction in California.  BFG has no "affiliations with the State," let alone any that are "so continuous and systematic as to render them essentially at home" in California. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation modified).  BFG is plainly not "at home" in California, and Eight Sleep offers no facts or arguments to the contrary.

**2.**     **The Court Does Not Have Specific Jurisdiction Over BFG**

Eight Sleep cannot demonstrate that BFG is subject to specific jurisdiction in California, because BFG has not purposefully directed any activities to the state of California or its residents, much less activities that could give rise to Eight Sleep's patent infringement claims.

Eight Sleep contends two types of contacts are sufficient to establish personal jurisdiction over BFG: (1) a "stream of commerce" theory, contending that BFG places its products into established distribution channels for the United States and this District (FAC ¶10), and (2) a purposeful availment theory, under which BFG has purportedly engaged in infringing activities in California.  (*Id*. ¶11.)  Eight Sleep "bears the burden of affirmatively establishing" the necessary facts to support these theories.  *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377-78 (Fed. Cir. 2015).  Because Eight Sleep has not done so and cannot do so, BFG must be dismissed.  Moreover, because exercising jurisdiction over BFG under either theory would be unreasonable and unfair, personal jurisdiction over BFG should also be

rejected. *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003).

### a.    BFG Does Not Place Products into Any Stream of Commerce Directed to California or the United States

Eight Sleep alleges that "[t]his Court has personal jurisdiction over BFG" because "[o]n information and belief" Defendants "place, have placed, and contribute to placing their products into the stream of commerce through established distribution channels knowing or understanding that such products would be sold and used in the United States, including in this District." (FAC ¶10.)  But this theory suffers from a simple, fatal flaw: BFG has no products for the United States at all.  (McConnochie Decl. ¶14.)

Courts routinely dismiss actions against foreign entities that "never manufactured or placed '*any* products into the stream of commerce that might have ended up in the forum[.]'" *Pinkerton Tobacco Co. v. Art Factory AB*, No. 2:20-cv-01322-SB-MRW, 2021 WL 4776349, at *5 (C.D. Cal. June 18, 2021) (citation omitted); *see also 3G Licensing, S.A. v. Lenovo Grp. Ltd.*, No. 17-84-LPS, 2019 WL 3974539, at *6 (D. Del. Aug. 22, 2019) (dismissing foreign defendant because it "does not import or ship any products into the United States, nor does it manufacture, sell, or offer for sale any products in the United States"); *World-Wide Volkswagen*, 444 U.S. at 298 (for stream-of-commerce theory, defendant must "deliver[] *its* products into the stream of commerce with the expectation that they will be purchased by customers in the forum state." (emphasis added).)  Indeed, "[a] key component of the stream-of-commerce theory is the existence of a product. Here, [the foreign entity] does not manufacture or sell any products." *PrimeSource Bldg. Prods., Inc. v. Phillips Screw Co.*, No. 3-07-CV-0303-M, 2008 WL 779906, at *4 (N.D. Tex. Mar. 25, 2008).

During the meet-and-confer process, Eight Sleep attempted to hand-wave over BFG's lack of any U.S. product by arguing that "[t]o the extent Blue Fuzion provided technical assistance in the design and development of the accused products, such

assistance would" be sufficient to support personal jurisdiction. (Ex. 1 at 1.)  Eight Sleep's argument is legally baseless.  In *PrimeSource*, for example, the court rejected the argument that providing design or technical input places or contributes to placing a product into the stream of commerce.  2008 WL 779906, at *5.  The defendant there "merely design[ed]" technology while others manufactured and sold the products, and the court found no authority equating technical assistance, sample testing, or visits to manufacturing facilities with placing a product into the stream of commerce. *Id.* at *4-5.

Moreover, even if Eight Sleep had some legal basis for arguing that "technical assistance in the design and development of the accused products" was sufficient for jurisdiction (it does not), the facts here still fall woefully short.  (Ex. 1 at 1.)  As discussed in Defendants' declarations, ██████████████████████████████ ████████████████  (McConnochie Decl. ¶9.)  None of these activities are relevant to the issue of patent infringement, and none warrant hauling a foreign defendant like BFG into a U.S. court.

BFG cannot place a product into the stream of commerce when it does not manufacture, import, distribute, or sell any Orion product—nor have any product directed to the United States at all.  Eight Sleep's effort to extend the stream-of-commerce doctrine to BFG's foreign consulting-type services is factually and legally unsupported and should be rejected.

### b.    BFG Has Not Purposefully Availed Itself of Any Privileges or Benefits of California, or Directed Any Activities Toward California

Eight Sleep's second jurisdictional theory is that "BFG has availed itself of the privilege of conducting and soliciting business within California[.]"  (FAC ¶11.)  Again, these conclusory allegations fail to satisfy Eight Sleep's burden of establishing personal jurisdiction.

Purposeful availment or purposeful direction exists only where a plaintiff demonstrates that (1) a defendant committed an intentional act, (2) expressly aimed

1  at the forum state, and (3) that causes harm the defendant knows is likely to be

2  suffered in the forum state. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

3  797, 803 (9th Cir. 2004). The plaintiff must show that the claims arise out of the

4  defendant's activities connected specifically with California. *See Doe v. Am. Nat'l*

5  *Red Cross*, 112 F.3d 1048, 1051 (9th Cir. 1997). Eight Sleep has not and cannot

6  point to any such actions by BFG.

7      First, Eight Sleep alleges that "[o]n information and belief" BFG has

8  "engag[ed] in at least some of the infringing activities in California[.]" (FAC ¶11.)

9  On the contrary, BFG does not engage in any activities in California (or the United

10  States more generally)—much less any allegedly infringing activities. Indeed, BFG

11  has confirmed that it does not engage in making, using, importing, offering to sell, or

12  selling the Accused Orion Sleep System, either in California or elsewhere.

13  (McConnochie Decl. ¶6.)

14      Second, Eight Sleep vaguely asserts that "others acting as agents and/or

15  representatives" of BFG have engaged in infringing activities. (FAC ¶11.) These

16  allegations fail to identify any alleged third-party whose actions can purportedly be

17  imputed to BFG. Moreover, even if Eight Sleep intended to identify Orion or another

18  third-party, it alleges no facts supporting an agency or alter ego theory necessary to

19  impute the contacts of that third-party to BFG. *Celgard*, 792 F.3d at 1379.

20      During the meet-and-confer process, Eight Sleep argued that by providing

21  consulting services to Orion, BFG has "induce[d] Orion to directly infringe by

22  importing, offering to sell, and selling the accused product." (Ex. 1 at 1.) This theory

23  also fails for multiple reasons.

24      First, Eight Sleep has no factual basis to allege that BFG "induce[d]" any

25  infringing conduct by Orion. To the contrary, declarations by Mr. McConnochie and

26  Mr. Zwiebel show that BFG merely provides consulting-type services to Orion, and

27  that Orion is responsible for importation, offers to sell, and sales of the Accused

28  Orion Sleep System. (McConnochie Decl. ¶¶9, 11; Zwiebel Decl. ¶14.) Moreover,

it is impossible for Eight Sleep to base its personal jurisdiction allegations on the theory of "induced importation" because, at a minimum, it is undisputed the Accused Orion Sleep System had not been imported into the United States at the time the Original Complaint was filed. (Zwiebel Decl. ¶12.) Second, Eight Sleep has no legal basis for alleging that the type of consulting services BFG provides to Orion are sufficient to "induce" infringement of a patent. Indeed, despite BFG specifically requesting that Eight Sleep provide some legal authority for its position, Eight Sleep provided none. (Ex. 1 at 1.)

Third, Eight Sleep is precluded from relying on Orion's actions to establish personal jurisdiction over BFG. Under Supreme Court precedent, Eight Sleep must show that BFG (not Orion) took actions purposefully availing BFG (not Orion) to the privileges and benefits of the forum state. *Celgard*, 792 F.3d at 1380 (citing *Hanson v. Denckla*, 357 U.S. 235, 253-54 (1958)). Eight Sleep identifies no such actions by BFG. Instead, at most, Eight Sleep has only identified actions by which Orion has availed itself of the privileges and benefits of California. But because Eight Sleep has not alleged any facts supporting an agency or alter ego theory, Eight Sleep cannot impute Orion's actions to BFG. *Celgard*, 792 F.3d at 1379.

Because Eight Sleep cannot show that BFG purposefully directed any activity toward California, its claims necessarily fail.

### c.    Exercising Specific Jurisdiction Over BFG Would Be Unreasonable

BFG does not engage in any activity necessary in order to infringe a U.S. patent. It does not make, use, offer to sell, sell or import any Orion products in the United States. (McConnochie Decl. ¶6, 11.) Instead, BFG merely provides consulting-type services entirely overseas. BFG is not aware of a single case where any defendant, much less a foreign defendant, was charged with patent infringement for providing the types of consulting services that BFG provides Orion. Exercising jurisdiction over BFG to allow Eight Sleep to pursue a completely novel legal theory

offends traditional notions of fair play and substantial justice, and should not be permitted. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

The Federal Circuit evaluates five factors when assessing reasonableness: (1) burden on the defendant; (2) forum state's interest in adjudicating the dispute; (3) plaintiff's interest in obtaining convenient and effective relief; (4) interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) shared interest of the several states in furthering substantive policies. *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1355 (Fed. Cir. 2017) (citing *World-Wide Volkswagen*, 444 U.S. at 292).

None of these factors support jurisdiction here: (1) requiring a Hong Kong company with no presence in the U.S. to defend a lawsuit in this District would be inherently burdensome, (2) neither California, nor the U.S. has any interest in adjudicating actions against foreign consultants when the party that is the focus of the dispute (Orion) is present in California, (3) Eight Sleep has not shown its interests are not adequately addressed by its suit against Orion, and (4)-(5) the judicial system nor the several states has a particularized interest in adjudicating claims against a foreign entity that has not manufactured, distributed, sold, or used any accused product in the U.S., particularly when the party that is responsible for distribution, and sales of the accused product is already present in the suit.

In sum, even if Eight Sleep could establish minimum contacts, which it cannot, the reasonableness factors confirm that exercising personal jurisdiction over BFG would be inappropriate.

### 3.    BFG is Not Subject to Personal Jurisdiction Under Rule 4(k)(2)

As an alternative to traditional personal jurisdiction, Eight Sleep invokes Rule 4(k)(2) arguing BFG's contacts with the United States as a whole support jurisdiction. (FAC ¶12.) But "while Rule 4(k)(2) is designed to facilitate obtaining jurisdiction over foreign defendants, it does not operate to relax the requirement that

1  the defendant's contacts with the forum be constitutionally sufficient" to satisfy due

2  process. *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir. 2005). And

3  Rule 4(k)(2) does not confer jurisdiction simply because a foreign entity is not subject

4  to any state's courts, there must be a showing of extensive, forum-wide contacts with

5  the United States. *Synthes (U.S.A.) v. GM Dos Reis Jr. Ind. Com. de Equip. Medico*,

6  563 F.3d 1285, 1293-94 (Fed. Cir. 2009).

7       Eight Sleep's Rule 4(k)(2) allegations fail for several reasons.

8       First, Eight Sleep's allegations under Rule 4(k)(2) fail for the same reasons its

9  general and specific jurisdiction arguments fail. Eight Sleep identifies no additional

10  facts supporting jurisdiction under Rule 4(k)(2), relying instead on conclusory

11  allegations that BFG is subject to jurisdiction because "(a) the claims … aris[e] under

12  federal law; (b) BFG is not subject to the jurisdiction to any state's courts of general

13  jurisdiction; and (c) exercising jurisdiction … [would be] consistent with the U.S.

14  Constitution." (FAC ¶12.) As discussed above, BFG has no relevant contacts with

15  California or the United States. (McConnochie Decl. ¶¶8, 13-14.) The FAC likewise

16  identifies no U.S. contacts by BFG to satisfy due process,  offering only the

17  conclusory assertion that BFG "availed itself of the privilege of conducting and

18  soliciting business within California" and engaged in infringing activities "in

19  California," without any factual support. (FAC ¶11.)

20       BFG's limited overseas work for Orion is not directed to the United States and

21  falls short of the extensive, nationwide contacts required for jurisdiction under Rule

22  4(k)(2).

23       **4.    Jurisdictional Discovery Is Not Warranted**

24       Jurisdictional discovery is warranted only where a plaintiff makes a

25  "colorable" showing of jurisdiction by "some evidence," not merely speculative

26  allegations. *See Mitan v. Feeney*, 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007)

27  (citations omitted). Courts consistently deny discovery where the request is "based

28  on little more than a hunch that it might yield jurisdictionally relevant facts."

*Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008); *see also Engasser v. Tetra Tech, Inc.*, 519 F. Supp. 3d 703, 710-11 (C.D. Cal. 2021), *aff'd*, 2022 WL 3334632 (9th Cir. Aug. 12, 2022) (denying jurisdictional discovery where plaintiff failed to identify information that would yield additional facts relevant to establishing jurisdiction).

Eight Sleep cannot meet this standard. Eight Sleep's jurisdictional assertions rest entirely on "information and belief," unsupported by any evidence. In contrast, Defendants' declarations confirm that BFG has no presence in the United States and engages in no activities directed toward the United States that could subject it to personal jurisdiction in this Court. And Mr. Zwiebel's declaration confirms, when the Original Complaint was filed, the Accused Orion Sleep System was still under development, defeating Article III subject matter jurisdiction because no completed product existed at the outset of this action.

Allowing even limited discovery would impose significant and unnecessary financial burden on Defendants and should not be permitted.

### D.    Eight Sleep's False Advertising Claims Are Not Adequately Pled.

Eight Sleep's false advertising claims are not adequately pled because they fail to adequately allege that any of Defendants' statements were false or misleading *when made*. (FAC ¶¶38-47.) For each claim—Lanham Act, 15 U.S.C. § 1125(a) (Count VI), Cal. Bus. & Prof. Code § 17500 ("FAL") (Count V), or Cal. Bus. & Prof. Code § 17200 ("UCL") (Count IV)—Eight Sleep must adequately identify a statement and plead that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *see McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023). And, importantly, all false advertising claims are subject to Rule 9(b)'s heightened pleading standard, requiring Eight Sleep to allege "the who, what, when, where, and how" of the claimed fraudulent conduct. *Bodenburg v. Apple Inc.*, 146

F.4th 761, 771 (9th Cir. 2025) (citation omitted).

Here, the FAC lacks sufficient facts to (1) state any plausible false advertising claim with particularity and (2) allege a violation of any prong under the UCL.

> **1.    Eight Sleep Failed to Plead Adequate Facts that Orion's Statements About the Accused Orion Sleep System were False or Misleading When Made**

Eight Sleep challenges statements made (1) in mid-November 2025 and mid-December (FAC ¶¶39-47, the "Product Capability Statements") and (2) on December 12, 2025 (*Id.* ¶¶29-35, the "Ready to Ship Statements"). The FAC, however, fails to plead sufficient facts indicating the claims were false when made. Instead, Eight Sleep asks the Court to *infer* that if Orion's Sleep System was in development ***as of October 9, 2025***, that claims made several weeks later must have been false. (*Id.* ¶46.) But that leap of logic is not supported by the allegations in the FAC. No facts are pled to establish that the Accused Product's features referenced by Harry Gestetner on Reddit (*e.g.*, the smart alarm, dual zone temperature controls, etc.) had not been fully developed when the Product Capability Statements were made in November. (*Id.* ¶¶41-43.) Nor does the FAC plead facts establishing that the Accused Orion Sleep System was not "ready to ship" as of December 12, 2025.[2] Absent such particularized facts, the FAC's temporal disconnect warrants dismissal. *See, e.g.*, *Apple*, 146 F.4th at 771 & n.5 (affirming dismissal of false advertising claims lacking "temporal allegations" "that fraudulent statements were false ***when made***" under Rule 9(b)) (citation modified); *Garcia v. Sony Comput. Ent. Am., LLC*, 859 F. Supp. 2d 1056, 1063 (N.D. Cal. 2012) (dismissing "defective" claims where plaintiff "claimed Sony had represented that the PS3 system was 'designed to play PlayStation3 format software,' but, significantly, stopped short of alleging 'that this

---

[2] Plaintiff claims that because portions of Mr. Gestetner's November 19 Reddit posts were written in the "presence [sic] tense" that must mean the features were "deployed in software which had been tested in the U.S." (FAC ¶41.) But this allegation supports, rather than diminishes, an inference that the December 12 Ready to Ship Statements were truthful, and Eight Sleep has not alleged any facts to support that the Reddit posts were separately false or misleading. (*Id.*; *see also id.* ¶¶42-43.)

statement was false or misleading at the time [plaintiff] purchased his unit,' particularly with respect to *future* games.") (emphasis added).

Eight Sleep's complaints about Orion's testimonials and social media comments do not change the analysis. Namely, Eight Sleep alleges that "Orion intended to create the impression" that its Smart Sleep System "was in existence and was available for purchase" by posting the testimonials. (FAC ¶¶45.) But Eight Sleep's allegations misleadingly omit the disclaimer that preceded these testimonials, which noted: "Hear from Orion friends and team members." (Ex. 2.) Given this disclaimer, nothing on the website gives the misimpression that the beta products being commented on in the testimonials were available to the general public when the statements were made.[3] (FAC ¶¶44-46.) Furthermore, the Complaint includes no supporting (much less particularized) facts to allege *how* and *why* the testimonials and comments were false when made. (*Id.*) Indeed, Courts routinely find that "reviewers' statements are classic statements of opinion, and, therefore, the reviews are not actionable[,]" as those consumer statements typically only "contain[] vague, generalized statements of opinion about the quality of, and the respective reviewers' experience with, the [] product—not statements of fact about the product." *BHRS Grp., LLC v. Brio Water Tech., Inc.*, 553 F. Supp. 3d 793, 801 (C.D. Cal. 2021) (collecting cases); *see Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009) (affirming dismissal of UCL and FAL claims based on finding of non-actionable puffery).

## 2. Eight Sleep's UCL Claim Independently Fails

UCL claims can only survive dismissal where a plaintiff *specifically* identifies

---

[3] *See* https://www.orionsleep.com/product/sleep-optimization-test (last visited Jan. 28, 2026). As the FAC includes a screenshot of Orion's website and relies on the testimonials for its false advertising claims, this website is incorporated by reference and the Court may evaluate the entirety of this webpage as necessary context for Eight Sleep's allegations. *See Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1053 n.2 (9th Cir. 2025) (the "district court appropriately considered [defendant's] website under the doctrine of incorporation by reference, as [plaintiff] extensively referenced [defendant's] website throughout its complaint.") (citation omitted).

which UCL prong(s) a defendant has violated. *See Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1199 (N.D. Cal. 2016) (granting motion to dismiss UCL claim and noting that "[i]t is unclear from Plaintiff's allegations which prong her UCL claim falls under … For this reason, the Court dismisses the [UCL] cause of action[.]"). Here, Eight Sleep generally alleges that Defendants violated the UCL, without specifying *which* prong Orion allegedly violated. (FAC ¶¶94-99.) General allegations that Orion has violated the UCL are insufficient to withstand dismissal. *See Moss*, 197 F. Supp. 3d at 1199 (dismissing UCL claim where it was unclear which UCL prong(s) plaintiff intended to pursue).

Regardless, Eight Sleep failed to plead a viable UCL claim under any prong. Any allegations in relation to the "fraudulent" prong must meet Rule 9(b)'s heightened pleading standard and must provide the "who, what, when, where, and how" of the claims alleged. *Jara v. Aurora Loan Servs.*, 852 F. Supp. 2d 1204, 1213 (N.D. Cal. 2012) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). But as explained above, the FAC is devoid of the specificity required by Rule 9(b). Eight Sleep also has not alleged a violation of the UCL's "unlawful prong," as the FAC does not "identify the particular section of the statute that was violated and describe with reasonable particularity the facts supporting that violation." *Kemp v. Selene Fin. LP*, No. CV 11-00837 GAF (DTBx), 2011 WL 13376982, at *3 (C.D. Cal. Nov. 2, 2011) (citation omitted). Nor does the FAC contain any factual allegation tethering Orion's alleged conduct to a violation of *any* constitutional, statutory, or regulatory provision to satisfy the UCL's "unfair" prong. *Nazemi v. Specialized Loan Servicing, LLC*, 637 F. Supp. 3d 856, 864-65 (C.D. Cal. 2022) (citing *Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020)). Thus, the UCL claim must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Eight Sleep's claims against Defendants.

Dated: January 29, 2026

Respectfully submitted,

COOLEY LLP


By: */s/Eamonn Gardner*
Eamonn Gardner (CA SBN 310834)
COOLEY LLP
1144 15th Street, Suite 2300
Denver, CO 80202
Phone: (720) 566-4000
Fax: (720) 566-4099
egardner@cooley.com

Alexandra Mayhugh (CA SBN 300446)
COOLEY LLP
355 South Grand Avenue, Suite 900
Los Angeles, CA 90071
Phone: (213) 561-3250
Fax: (213) 561-3244
amayhugh@cooley.com

*Counsel for Defendants Orion Longevity Inc. and Blue Fuzion Group Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 29, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

Ryan Ronald Smith
Wilson Sonsini Goodrich and Rosati
650 Page Mill Road
Palo Alto, CA 94304
650-493-9300
rsmith@wsgr.com

Alexander Miller
Naoya Son
Wilson Sonsini Goodrich and Rosati
650 Page Mill Road
Palo Alto, CA 94304
650-493-9300
Fax: 866-974-7329
alex.miller@wsgr.com
nson@wsgr.com

By: */s/ Erin McKenzie*
Erin McKenzie

COOLEY LLP
ATTORNEYS AT LAW